Thank you and good morning everyone. We will hear four cases this morning, starting with Peterson v. Nelnet Diversified Solutions, numbers 19-1348 and 20-1217. Mr. Hanson, you may proceed. Good morning. Adam Hanson on behalf of Appellants in this certified collective action. I'll do my best. I intend to reserve three minutes for rebuttal and may it please the court. The question presented here is whether time spent by call center employees booting up their computers and loading job critical software tools is compensable under the FLSA and the Portal Act. The answer is yes. The employer in this case is asking this court to do two things that are rule holding that work is not commenced until employees have accessed the innermost reaches of the employer's computer system. And second, it asks the court to disregard the plain text of the governing statutes by invoking the judge made de minimis doctrine, a step this court notably has never taken in the more than 80 years since the FLSA was enacted. The first question with respect to compensability proceeds in a very straightforward manner. The first question is whether the activities in issue our work under the FLSA and the Supreme Court has given us a helpful definition. These are activities that are controlled or required by the employer and primarily for the benefit of the employer. And the answer here is Mr. Hanson, could I just ask you this is a threshold question. So you're trying to overcome summary judgment from the district court and I'd like to be clear on whether there are any, whether you're contending that there are disputed issues of fact that should have prevented summary judgment or whether this appeal involves only questions of law, that the facts are established or just you're just making legal arguments at this point. Yeah, let me be clear. I think there are some disputed questions of fact, but our contention is that they are not material disputed questions of fact. So we are asking for an order from this court remanding, reversing and remanding with instructions to enter summary judgment in favor of my clients. Thank you. Now that, thank you for clarifying that. Is that, can I ask another question on that ground? Is that and you, is that the case for both issues, both the compensability issue and the de minimis issue? It is, it is the case on both issues. And of course I don't need to tell this court, and I've seen plenty of cases where this has occurred, that if this court feels differently and feels that this case needs to be tried, then this court's judgment is what governs. Both parties in this case take a different view of it. That's our view of it on the record that we've established here. But I do appreciate that question. Let me follow up then because I'm a little bit confused on your position about the compensability for a minute here. In particular, you suggest that you, you take issue with a number of the, the expert, Nelnet's experts conclusions. And yet it doesn't appear at least in the district court that you contested those conclusions. And in fact, you rely on them both in the district court and here. And that's why I asked if you were willing to concede that all of the facts have been established, and this is a purely a question of law as to the de minimis issue, and you sought summary judgment on that issue. We did, correct. There's cross motions for summary judgment. What I'll say with respect to the expert is, typically there is not expert testimony. There was in this case, and the appellants agreed that the expert, and I want to say this exactly right, that they accepted the findings of the expert with respect to what the time records show. And so in other words, if we're conducting a measurement between timestamp A and timestamp B, then absolutely, there is no dispute. We think that those measurements are accurate. That would purely be a question of law. There are some conclusions in the expert's report that we don't agree with, but we think that it's just in light of the summary judgment standard. And we highlighted them in our brief. For example, the expert, the first thing the expert measures is this improvata timestamp. This is one of the layers of software that these employees have to go through, but it doesn't account for the time spent before that, for example, actually turning on or waking the computer. So did you, did you, Mr. Hanson, did you quote exactly then your stipulation of accepting the expert? It sounds, the way you described it was a little narrower than the way I thought it was. So you did not generally at any point just say we accept that expert. You, you always were very precise that it was only as to what the time records showed. Is that, that's right. That's, that's absolutely correct. Cause you can imagine a hypothetical case where, boy, we don't even agree with the arithmetic. We don't even agree with the math. We're not talking about that here. What we're talking about is the measurements themselves. We agree with. Now there are, there's a little bit of dispute about how those measurements fit into what the FLSA requires because the expert used this 10th percentile measurement when it should have been the average and so forth. And of course, everyone agrees. That precisely is my question. Did you accept to the 10% minimum approach? And even though you all have tried to explain it, I'd still like to hear a three sentence English explanation of that. Well, the answer to your question is no. And what we, what we accepted is what the time records show. So in other words, it's the hard underlying data, you know, clocked in at this time, swiped a badge at this time. That's what we've accepted. And look, the analytical touchstone of the fair labor standards act is the average amount of time it takes. That's what the Supreme Court measured in Tyson versus Bufecchio. So you did not accept the median 10th percentile approach evaluation. Correct. That is correct. Then in a couple of words, describe what that approach is. I'm sorry, which approach? The median 10th percentile approach. Sure. Probably the best way to describe this is with an analogy. I read the other day that Vanguard did a study and that the median amount of money in a 401k account in Vanguard is something like $20,000. The mean amount is closer to $100,000. That's because there are a few people, well, more than a few, but some people who have a significant amount of money, whereas there is a large number of people that are closely bunched at the bottom. Right. I think we know the difference between median and mean. My question is, what is this 10 percentile? How does it figure in? Well, as clear as I can state it in this case, 10th percentile literally means what is the measurements where 90 percent of the data set is longer and 10 percent of the data set is shorter. It just identifies that point in the data set. So it's a very short measurement, even the data set. The problem here is that what the FLSA ultimately cares about is the average amount of time spent. And that's what the court has said in Tyson and in Boofakio. Mr. Hanson, can I just try a number out on you that you have in your brief? So in your brief, this is at page 54, you say the plaintiff was losing $8.44 per week. And I wasn't clear on the derivation of that. There wasn't any talk about 10 percent or median at that point. But is that sort of implied that you're relying on the 10 percent to get that number? No. So what went into that number is just the statutory formula, which I believe we quoted in our brief at that same point. So you take the hourly rate, multiply times time and a half. And then I think our brief used three different estimates for the amount of unpaid time per week, right? Three minutes per shift, four minutes per shift, five minutes per shift. I thought you agreed to two and a half percent, two and a half minutes per shift. I thought that was an agreement that was at the district court. No, there's no agreement as to two and a half minutes per shift. Again, the agreement was for what the time records show. In other words, when there was a swipe in, when there was a swipe out and so forth. So our position on this, and I don't want to get bogged down, I do appreciate these questions. Ultimately, our position is that this sort of factual skirmish doesn't matter because everyone agrees that there was, you know, whether it's three minutes or five minutes, there's some chunk of time that's unpaid. And with respect to the terms of the de minimis doctrine, and maybe I'll turn to that now, it really just doesn't matter. The de minimis doctrine tells us that an amount of time, however small, an employer cannot fail to count it when it is part of the employee's fixed or regular working time. And this court has cited that regulation favorably in Aguilar and other cases. And of course, in this case, it was- Well, that was, counsel, that's compensability. I mean, I think you're talking about compensability, but I mean, when we come down to the de minimis, we look at, we do look, you take that base amount, and I think that's what we're trying to get at. In order to apply the three factors that we apply to decide whether this is de minimis, we do need to know what amount of time are we talking about, because one of the factors is the aggregate amount of time or damages, I guess, that we're talking about here. And you can't do that without calculating the amount of time that is at issue. And it appeared to me that you had conceded, for instance, that the aggregate amount of time was, I think it was 30,000 or something in that range. And so, to me, you've conceded this issue about what the overall amount of time is that we're discussing here. Sure. Well, just to be clear, I was referring directly to the de minimis regulation, which says an employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time. And it's because of that regulation that ultimately this factual skirmish doesn't matter. When you have a scenario like this, where it's time worked each and every individual shift by thousands of employees as a matter of company policy over a period of years in a controlled environment where it would be extraordinarily easy to estimate that amount of time, it doesn't matter. An employer hypothetically could just say, I'm going to stop paying people for 30 seconds per shift just to see if courts will go along with it. And the answer under the regulation is you can't do that. You can't do five seconds like that. So I just want to make sure that we're tethering this factual dispute to the legal premises, which is this is frankly why we all agreed to use the same expert's report. But we do need to know a number. We do need to know a number if we're going to talk de minimis. And so do you agree with Judge Morris's statement about a $30,000 agreement that that was the aggregate lost time for everybody in the class? Is that right? No, we don't agree with that. Again, that's not consistent with the stipulation. That doesn't include all sorts of amounts of time. It doesn't include people who were not, who didn't opt into the case. What was the stipulation? Do you have the sentence or two about that stipulation? Could you read it? It has the word, the number 30,000 in it. There is no stipulation that has a number 30,000 in it. And I think the district court referred to the district court referred to a number that you had both agreed to in that range on the aggregate issue. I'm not sure I have that that citation directly in front of me in the record. But I think you know our position here. I mean, look, the last thing I'll say and I'll reserve the rest of my time for rebuttal is that the analytical touchstone is a just and reasonable inference under the FLSA. Many cases don't even have expert testimony. And so it might be, well, I think it's two to three minutes per shift, or I think four to six minutes per shift, or whatever it may be. That's fine. Cases can be decided on that basis. It's not necessary for a court or even a jury to arrive at this. This is exact number. And of course, in this case, all we're saying is there's a dispute. One side is essentially interpreting the same data to say it's two minutes. The other side is looking at the same data and saying it's more like five minutes. But ultimately, it doesn't matter. Under the de minimis regulation, that time is compensable. All right, I'd like to reserve the rest of my time. Thank you. Thank you, Mr. Hanson. Mr. Ellis. Good morning, Julian Ellis and Matt Aronson on behalf of Nelnet Diversified Solutions. And may it please the court, Mr. Aronson and I are going to split the argument today. I'm going to focus on the summary judgment order. And Mr. Aronson is going to answer any questions you have on the cost award. Judge Moritz, I want to start with a question that you ended with, with Mr. Hanson related to the minimus doctrine. And particularly, I want to clarify the regulation 785.47. Mr. Hanson read the fourth sentence of that regulation, but left out the first three of the Supreme Court's de minimis rule announced in Anderson versus Mount Clemens. That has been applied by Lindau. And this circuit has applied the Lindau factors, the three Lindau factors for better part of since Lindau's existence in 1984. So Lindau is the standard. And the one shift time during the actual shift. So after the continuous workday doctrine has begun. So let there be no question that Lindau is our standard. I know this court's very familiar with the Lindau standard having just applied it in Aguilar. So going to the actual factors, the three factors, the district court made detailed findings here. And I want to focus on two of those factors, the administrative burden and the aggregate claim. First as to the administrative burden, this case started in with plaintiffs alleging that the time to complete these pre-shift steps consumed up to 15 minutes of their day. That's in paragraph 38 of their amended complaint. Now that hired an expert, the expert spent hundreds of hours in trying to calculate the time at issue here, pairing different software programs, and even then had to apply statistical assumptions to come to an estimate. And what we estimated the time to be 1.6 to 2.27 minutes per shift. And it depends on where the employee is at the various locations, call center locations. And the fact that we had to do that is the very evidence of the difficulty involved in trying to estimate that time. So I think the district court was entirely correct to find that the administrative burden here weighs in favor of Nelnet by a large margin. Specific to the aggregate amount of the claim, even at 2.27 minutes, which keep in mind is the amount we're bound that we're talking about here, we're talking about 48 cents per day. And the maximum amount of damages here is $31,585. And even that amount factors in some time that neither party considers compensable. For instance, Dr. Anderson, to get that number, first looked at the badge end to come into the building and then walk to the cubicle where the work was started. So even that number is a bit excessive. And it's nowhere near. Mr. Ellis, do you believe that the plaintiff would be bound by that number if they go to trial? Have they entered into a stipulation that would restrict them to that number and prevent them from a larger number at trial? Yes, Judge Ebell, I think they have. And that's on page 187 of the supplemental appendix, the proposed pretrial order. And that was entered or filed by the parties one day before the district court entered summary judgment here. But I think besides the point that they would be bound by the stipulation, I think you have to look at the sequence of events here. Dr. Anderson issued his report in January. Within eight days, plaintiffs came to Nelnet and said, let's call off the dogs on discovery. This is getting too expensive. And they agreed. And this is the quote you were looking for earlier, Judge Ebell, and this is at subat 37. Plaintiff informed Nelnet that he accepts the findings of the expert with respect to what they show. Any additional discovery related to this is totally unnecessary, frivolous, and not proportional to the needs of the case. After that, plaintiffs didn't disclose an expert witness. They didn't depose the expert. They used the expert's numbers in their affirmative motion. They didn't contest the material facts in our affirmative motion. By all accounts, it gets really, really close to Mr. Ellis. Taking the expert's numbers, and let's talk about the $30,000 amount, can you point to any case where, and this is on the de minimis issue, that has found the amount of damages here to be de minimis? Judge Matheson, yes, I can point to a case, but I'm going to give some context first. The very, it's not common for there to be a final damage calculation at, say, the motion to dismiss or the motion for summary judgment stage. So if you look high and low on Westlaw or LexisNexis, you're not going to find a lot of cases that actually quantify the number. The cases that this court has rejected is Monfort at $1.6 million and Aguilar at $355,000. But if you look at the Alvarez case that went up to the Supreme Court, the amount of time at issue in that case was about two minutes, and we're talking about 815 opt-in plaintiffs. And that was for time donning and doffing hard hats, earplugs, frocks, safety goggles, hairnet, and boots. So if you compare the two minutes in Alvarez to the two minutes we're talking about, if you compare the number of opt-ins, 815 in Alvarez versus 336, and the Ninth Circuit in that case said this is de minimis, even despite the aggregate amount. And that particular issue wasn't appealed up to the Supreme Court. So I know it's not a perfect comparison, but even applying the minimum wage at that time in Washington State, which was around $5 to $6, you're talking about a number north of $50,000. And you would distinguish Aguilar how? For the de minimis component, I think Aguilar is consistent with what we're arguing. In terms of the aggregate amount, it's $355,000. There's also, there wasn't the factual record developed here, or in Aguilar as there is here. The expert report, and the amount of time at As the court said, the time clock was just beyond the security screening, and it covered the entire amount of time, even to the point of returning the specialized keys. So I think Aguilar is consistent with what we're arguing and supports our position here. Let me ask a question on the first prong of de minimis, assuming we accept de minimis, is the practicality of the administrative difficulties of recording the amount of the additional time. Do you agree that we have acknowledged or accepted that we could use, that the employers could use an estimate of that amount of time, as opposed to having to calculate it employee by employee? Judge Ebell, there is one sentence in Aguilar that references an estimate to account for the pre-shift screenings. And I know there is an additional decision, your decision, and Jimenez that references estimates as well. However, you have to look at the type of estimate that we're talking about. Indeed, the first step of the de minimis doctrine is to first estimate the time to determine whether it exceeds the 10-minute de facto threshold. So if we're just accepting any estimates, then the administrative burdensome factor is illusory. Here, the estimate that was calculated was a litigation estimate. And again, it was in response to plaintiff's allegations that the time exceeded was around 10 to 15 minutes. And so our expert, the detail that he nature, goes to why it is administratively difficult here. If Nelnet was to try to recreate what the expert did, every two weeks to pay these employees, we'd lose all of the efficiencies gained from actually using electronic timekeeping software. Counselor, that's where I'm losing you. I don't understand why it matters that this was in litigation. Nelnet hired the expert. Nelnet paid the expert. And there's some question about whether plaintiffs have accepted that expert's conclusions. So I guess I'm struggling to see why that wouldn't be the easy answer here. And I think that was raised in the plaintiff's brief that in terms of administrative difficulty, we've already got an estimate. You can use an estimate. And it's your estimate, your client's estimate. So I guess I'm struggling to see why this would be administratively difficult in light of what has taken place during litigation and plaintiffs' apparent accepting of some of that. Judge Barrett's two points. First, going back to first principles, the administrative burdensome factor considers the difficulty in being able to record the time. And our experts attempt to try to recreate a recording of that time in the detailed steps that he had to take to do that is case in point of the difficulty. And then... But it's already been incurred. That's my point. I don't think you're dealing with that point, which is you've already made that determination. And perhaps you have to revisit it occasionally. But why don't you come up with, if it's two minutes and 20 seconds, to the payroll of the CCRs? That's been recognized as an option, and I guess I'm not understanding why that's not an option here. Well, a position like that, Judge Moritz, would be, it'd be like a heads I win, tails you lose. We're trying to dispute the alleged amount of 15 minutes in the complaint. But when we do dispute it and prove that it is a small amount of time, we're told that that cuts against us on the de minimis factor. And I don't think the de minimis factor considers that. Well, the trouble is, if there's a determination that it's compensable, if we accept that determination that the district court made here and don't reverse on that ground or affirm on that ground, it is compensable. The employer is obligated to pay it. And I guess I'm struggling to see why it's so wrong to use your own estimate, which you claim to be correct. And to have had the expert prepared with all the information the expert needed, I guess I'm struggling to see why that isn't an appropriate estimate. And in which case, wouldn't the balancing on that factor end up in favor of the plaintiffs here? No, Judge Moritz. And I think you could look no further than Judge Wilkinson's concurrence in Perez on the difficulty of accepting estimates. Even on appeal, plaintiffs have shown a propensity to challenge that estimate. So if we accept it 2.27 minutes and start paying employees tomorrow, nothing prevents them from us being right back here before you in two to three years from now. And real briefly on the compensability. Counsel, could I just ask you, I was interested in one thing you explained in your brief, which you said that customer service representatives initiate Citrix multiple times a day. Now, if they get paid for that, why not pay them for initiating Citrix at the beginning of each day? What difference does it make? If that's said in the brief, Your Honor, it was a misstatement. So what they do multiple times a day is scan in and out using their badge and then typing a password. Just like you would do if you left your computer, it went to sleep, you come back, they scan in, they type in their password, and it brings back up their desktop. And so this is one point critical to distinguishing the steps that are at issue here. The steps that are at issue here are booting up and signing in, not loading the job relevant programs. And taking from this court's decision in Aguilar, there's a distinction between steps and furtherance of generalized equipment versus specialized equipment. The computer here doesn't become specialized at best until they start loading those job relevant programs, which is why we contend that the time is non-compensable from the very beginning, from booting up to the time of clocking in. And it's uncontested that plaintiffs are allowed to clock in and then load the job relevant software. And I've left my colleague no time to defend the cost award, so I apologize for that, but we ask. Counsel, I'm going to ask your colleague to take one minute to make his essential point, and we'll add that on to Mr. Hanson in rebuttal. Thank you, Judge Matheson. Your Honors, as the prevailing party, Nelnet is presumptively entitled to its costs. The district court followed this presumption and awarded Nelnet 58,000 total taxable costs, imposing them against all collective members jointly and severally. About 33,000 of the cost award was comprised of taxable e-discovery copying costs under section 1920 subsection 4. The district court did not err. For years, courts, including in the Tenth Circuit, have awarded costs under section 1920 subsection 4 for converting and producing electronic materials. Those are the digital copying costs awarded here. Rimini does not bar such costs and courts across the country continue to award them post-Rimini. Further, all opt-ins were parties to the litigation and bound by the judgment, and joint and several liability is the default rule. Plaintiffs have offered no evidence warranting a departure from the rule. Therefore, the court should... So just quickly, doesn't the judgment in district court need to be amended to include the opt-in plaintiffs? Your Honor, I would say to the extent there was any clerical error there that the judgment did not include all the opt-ins, this court could amend the judgment to include them or remand it to the district court for the court to do so. They were party plaintiffs and are bound by the judgment, and I think that is clear as made by the district court. Thank you. You're clear that this time did not include any research of the records and the initial cut of what was relevant or not, that the time that you are requesting here did not begin until you had the documents to produce, and then it was from there through the production that is included. Is that clear from the evidence? The evidence is that, Your Honor, these were documents we were required to obtain and produce because of the plaintiff's discovery requests, and therefore the costs here were for the steps of electronic copying, specifically document conversion and production to portable media. That's my question. Just document conversion and production, but it did not include an initial scanning of the entire records or determinations of attorney-client privilege or other things to decide whether the documents would be produced in the first place. There's no doubt about that, is there? No, there's no doubt, Your Honor. It did not include that. Thank you, Mr. Hanson. Mr. Hanson, you may proceed. We'll give you a little extra time on the costs. I do appreciate that. I do want to focus on the de minimis doctrine, of course. I'm absolutely happy to answer any questions with respect to the costs, although I think our briefs do the job there. Two points with respect to de minimis. The first is this business of creating an estimate. There are situations out there where an estimate may not work for two reasons. First, you may have dissimilarly situated employees. One has to spend 10 minutes putting on gear. Another is five. Another group is zero. Here, they're all dealing with the same computer in all their offices. I assume it started from, in fact, I was surprised. I would vary from city to city, but essentially it's the same job. It is the same computers, isn't it? It is an identical process for every relevant class member, every single shift. If you're ever going to allow an aggregate estimate, this would be the case to do it. Correct. I'm just trying to suggest, just because this court has said an estimate would work in Aguilar doesn't mean that you can do an estimate in every case. The other reason that an estimate may be a challenge in certain cases is because the work itself is super rare and unpredictable. If we don't know how many times a year or how many times a week an employee has to do a certain task, this is what the de minimis doctrine was really intended to get at. These duties that are rare and fleeting and impossible to capture. Here, not only is it not rare, it's happening every single shift and the process is identical. We're casting about saying, well, how would an estimate not work? Well, the answer is it would always work in a case like this. If this time is compensable, frankly, that's game over. Last, with respect to the aggregate amount of time, I would just remind the court the touchstone of the analysis is the amount of time on a per-employee basis. This makes sense. This court has said you could look at all the employees too, and I think that's sensible, but we ought to be very cautious about having an outcome that diverges based on whether someone just chooses to bring this case as an individual case versus a collective action. 216B, the collective action is purely procedural, of course, and it would be very, very odd and I think uncomfortable for everyone if you said, well, we got 200 people in this case, so that gets them across the finish line, but this poor guy who brought the case by himself, it's de minimis as to him. Really, the touchstone of the analysis is what matters most here, which is the amount of time per employee per day. This court said in Aguilar, even a dollar a week is a significant amount in the aggregate. Well, I think we quoted another case as saying that, and I think Nelnett pointed out in their brief that a dollar a week back in the 50s when that case was, that opinion was issued, is now $9.87 cents a week, whatever. The comparison doesn't really work to a dollar a day, and Nelnett pointed out we don't have anything close to $9. That's true, and I'm not going to fault the Aguilar panel there. Two-thirds of them are here, right? I would just say, look, the Aguilar panel quoted, I mean, was referring to a case, that was my point. It wasn't saying that that would be the number today that we would accept in any case, and the Aguilar panel pointed out very clearly each case is different. So I do think that that number is significant, and we do have that factor for a reason, whether you look at it individually or in the aggregate. But your argument is that we look at that the determinative factor is on the employee basis. You look at aggregate also on de minimis, so I guess you look at both. Is that your position? I'm a little confused how you're thinking the aggregate versus the individual. It's actually, they're both aggregate. So one is just aggregated across a single employee, so you would essentially look at how much time a single employee worked on a per week, per year basis, whatever that may be. And then the second lens is to look at it using the total number of employees. But you look at both lenses, and you're saying that neither lens is controlling over the other. They're both legitimate analyses. Is that what you're saying? That's what I'm asking. I'm saying the former is, it takes some predominance over the latter. The latter is sort of illustrative. The former meaning the individual. Yep, the individual. And you can look at it in Aguilar. You can look at it in Reichby-Monfort. That's what I'm drawing from. I'm not saying anything new here. So our view is that the aggregate amount, no matter how viewed in this case, it exceeds the amount that would be considered de minimis. All right, unless the court has questions, I'm prepared to submit the case and ask that the panel reverse the decision with instructions to enter summary judgment in favor of the appellants. Thank you very much. Thank you. Thank you to both counsel. The case will be submitted. Counsel are excused. We appreciate your arguments.